IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge R. Brooke Jackson

Civil Action No. 11-cv-002763-RBJ

ROBERT J. PICCOLA,

> Plaintiff,

v.

MICHAEL J. ASTRUE, Commissioner of Social Security,

> Defendant.

---

ORDER

---

This matter is before the Court on review of the Commissioner's decision that denied

plaintiff Robert Piccola's application for Supplemental Security disability benefits pursuant to

Title XVI of the Social Security Act ("the Act"). Jurisdiction is proper under 42 U.S.C. § 405(g)

and 42 U.S.C. § 1383(c). This dispute became ripe for decision by this Court upon the filing of

plaintiff's Reply Brief on April 11, 2012. The Court apologizes to the parties for the delay in

resolving the case.

**Standard of Review**

This appeal is based upon the administrative record and briefs submitted by the parties.

In reviewing a final decision by the Commissioner, the role of the District Court is to examine

the record and determine whether it "contains substantial evidence to support the Secretary's

decision and whether the Secretary applied the correct legal standards." *Rickets v. Apfel*, 16

F.Supp.2d 1280, 1287 (D. Colo. 1998). A decision cannot be based on substantial evidence if "it

is overwhelmed by other evidence in the record or if there is a mere scintilla of evidence

supporting it." *Bernal v. Bowen,* 851 F.2d 297, 299 (10th Cir. 1988).   Substantial evidence

requires "more than a scintilla, but less than a preponderance."  *Wall v. Astrue*, 561 F.3d 1048,

1052 (10th Cir. 2007).  Evidence is not substantial if it "constitutes mere conclusion."  *Musgrave*

*v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992).

**Facts**

Mr. Piccola applied for disability benefits in 2009 claiming an onset date of August 1,

2008.  A hearing was held May 7, 2010.  Mr. Piccola named several impairments in his

application including post-traumatic stress disorder following the death of his child, depression,

anxiety, a right renal mass, and a back injury.  R. 148.

In 2001 Mr. Piccola's son was killed in a car accident in which Mr. Piccola's wife was

driving.  R. 34, 148.  He began to become depressed after that tragic incident.  R. 34.  His

marriage thereafter fell apart.  In 2004 he was diagnosed with a tumor in his right kidney.  R.

148.  That is when he "just felt like I gave up on everything."  R. 35.  He initially claimed an

onset date of March 2, 2004.  However, he first sought treatment for depression and anxiety on

August 22, 2008.  R. 151, 233.  At the ALJ hearing, Mr. Piccola's counsel moved to amend his

alleged onset date to August 1, 2008.  R. 30.

He saw Nurse Practitioner Goldberg between August 22, 2008 and November 4, 2008.

She diagnosed major depressive disorder, post-traumatic stress disorder, and dysthymic disorder,

R. 240, and she prescribed Celexa, an antidepressant, as well as Trazadone and Lamictal.  R.

238.  In November 2008 Nurse Goldberg completed a form for the State of Colorado in which

she opined that Mr. Piccola was "disabled" and "unable to work at any job." R. 239-40.  On that

form Nurse Goldberg also opined that these symptoms would last another 9-11 months.  *Id.*  Mr.

Piccola testified that he stopped seeing Nurse Goldberg because he could not afford to continue weekly appointments. R. 41.

Mr. Piccola was also evaluated by Cameron Kesler, D.O., in December 2008.  R. 241-45. During that examination, Mr. Piccola's chief complaints were a right renal mass and right arm pain and numbness. R. 241.  Dr. Kessler's report did not devote much attention to Mr. Piccola's mental condition, but he did note that Mr. Piccola "did not seem down and had a normal affect." R. 242.

Mr. Piccola was seen by Kenneth Suslak, Ph.D., on December 31, 2008.  Dr. Suslak found that Mr. Piccola's "consciousness was dominated by his sense of hopelessness and despair about the downward spiral of his life," and determined that he suffered from "major depression, recurrent, moderate."  R. 250.

A psychiatrist, Donald G. Glasco, M.D., reviewed Mr. Piccola's medical history through February 4, 2009 at the request of Disability Determination Services.  Dr. Glasco determined that Mr. Piccola suffered from major depressive disorder, recurrent, moderate.  R. 202.  The doctor also believed that neither of the previous exams supported the severity of the depression Mr. Piccola claimed, and therefore, that Mr. Piccola was only partially credible.  R. 211.  In his opinion Mr. Piccola's condition did not significantly affect his mental residual functional capacity in 10 of the 20 categories on the evaluation form.  R. 195-96.  It had a moderately limiting effect on the other 10 categories.  *Id.*

Mr. Piccola was referred, allegedly by his attorney, to David J. Muller, M.D. a psychiatrist.  There is something of dispute as to how many times Dr. Muller actually saw him. According to an affidavit submitted with plaintiff's reply brief and signed by Dr. Muller on April 6, 2012 -- which of course is long after the ALJ's decision of July 22, 2010 and the Appeals

3

Council's denial of review on August 25, 2011 -- he had "consultations" with Mr. Piccola on December 28, 2009, February 9, 2010 and March 9, 2010.  [#13-1].  That is not clear from the medical records in the administrative record.  R. 258-61.  According to Mr. Piccola, Dr. Muller prescribed additional medications.  R. 42.

On March 9, 2010 Dr. Muller completed a form for Mr. Piccola's social security application that said that Mr. Piccola suffered from "marked" or even "severe" limitations in mental functioning.  R. 255-56.  The depression restricted work-related activities mildly as to understanding and remembering simple instructions and the ability to make judgments on simple work-related activities; markedly with respect to carrying out simple or complex instructions and making judgments on complex work-related decision; and extremely with respect to his ability to understand and remember complex instructions.  R. 255.  The opinions appear to have been based on Dr. Muller's impressions from what Mr. Piccola had told him in their sessions.  R. 255-61.

**Conclusions**

The Administrative Law Judge (ALJ) determined that Mr. Piccola was not disabled, and the Appeals Council denied Mr. Piccola's request for review.  In this appeal Mr. Piccola argues that the ALJ improperly evaluated the opinions of Dr. Muller and Nurse Goldberg.

Dr. Muller

The ALJ "rejected" Dr. Muller's opinion.  R. 21.  The ALJ explained that Dr. Muller had

no treating relationship with the claimant.  In fact, it appears, based on his clinical notes, that he only saw the claimant one time, on March 10, 2009, notwithstanding evidence that the claimant completed medical evidence questionnaires for this doctor in December, 2009 and February, 2010.  Dr. Muller evidently visited with the claimant one time for about 25 minutes.  There is no evidence that he conducted a formal examination.  His notes are brief, and about half of them seem to be concerned with matters of the claimant's pending liability claim.  In short, it appears the assessment of Dr. Muller was obtained solely for the purpose of furthering the claimant's claim for disability.  His

opinion is not consistent with the medical opinions of Dr. Suslak and Dr. Glasco, which are given great weight, nor is it consistent with the overall weight of the evidence. There is no evidence that Dr. Muller is a specialist in a field related to his opinion, i.e., mental health, or that he reviewed any medical records.

R. 21. Mr. Piccola now argues that the ALJ erred in rejecting Dr. Muller's opinion, because the rejection was based on several inaccuracies.

First, the ALJ indicated that he believed that Dr. Muller saw Mr. Piccola only one time, whereas the Muller affidavit indicates that he had three consultations with Mr. Piccola. The medical records that were before the ALJ are unclear. Mr. Piccola apparently filled out paperwork for Dr. Muller in December 2009, February 2010, and March 2010. Dr. Muller's notes did not clarify whether Dr. Muller saw Mr. Piccola in December and February, and if so what type of consultation or evaluation occurred, or whether Mr. Piccola only submitted paperwork. R. 260-61. Based on what is in the record, I can understand why the ALJ was not impressed with that evidence.

However, the record is also thin on the other side. Dr. Suslak and Dr. Glasco did not have substantial contact with Mr. Piccola. Even Nurse Practitioner Goldberg had relatively limited contact. The basic claim here is that Mr. Piccola was so depressed over certain events that he could not work. Those events, while admittedly tragic and disturbing, occurred several years before the claimed onset of his disability. Essentially the only evidence in support of the claimant other than his own testimony was the opinions of Goldberg and Muller. My view is that the record was incomplete – a fact for which Mr. Piccola and counsel must accept a fair share of the blame. The burden is on the claimant.

Nevertheless, during a Social Security disability hearing an ALJ has a "basic duty of inquiry, to inform himself about the facts relevant to his decision and to learn the claimant's own version of those facts." *Thompson v. Sullivan*, 987 F.2d 1482, 1492 (10th Cir. 1993) (internal

quotation omitted).  It is important for an ALJ to determine "(1) the nature of a claimant's alleged impairments, (2) what on-going treatment and medication the claimant is receiving, and (3) the impact of the alleged impairment on a claimant's daily routine and activities."  *Id.*  The ALJ did not ask questions that might have enabled him to better evaluate Dr. Muller and his opinions.  I note as well that the ALJ found that there was no evidence that Dr. Muller was a specialist in a field related to his opinion.  However, during the hearing, Mr. Piccola's attorney clarified that Dr. Muller was a psychiatrist.  R. 42.  While an attorney's comment is not "evidence" as such, it appears that the ALJ disregarded the comment, for reasons not explained.

Dr. Muller claims, again in his post-decision affidavit, that he was Mr. Piccola's treating psychiatrist.  I do not know what he means by that.  If he was a treating physician, then potentially his opinions deserve some weight.  "The treating physician's opinion is given particular weight because of his unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone or from reports of individual examinations, such as consultative examinations or brief hospitalizations."  *Doyal v. Barnhart*, 331 F.3d 758, 762 (10th Cir. 2003).  However, "[a] physician's opinion is . . . not entitled to controlling weight on the basis of a fleeting relationship, or merely because the claimant designates the physician as her treating source."  *Id.* at 763

The court "neither reweighs the evidence nor substitutes its judgment for that of the agency."  *Thompson v. Sullivan*, 987 F.2d 1482, 1487 (10th Cir. 1993).  That is not my intent here.  Rather, I conclude that it is appropriate in these circumstances to remand for the ALJ to receive such additional evidence concerning Dr. Muller and the nature of his contact with and evaluation of Mr. Piccola as the claimant might present.  The ALJ will then reconsider the evidence, with the additional information regarding Dr. Muller in hand, and issue a new decision.

Nurse Practitioner Goldberg

Next, Mr. Piccola argues that the ALJ did not properly consider Nurse Goldberg's opinion. According to Social Security Regulations, Nurse Goldberg was not an "acceptable medical source." SSR 06-03p, 2006 WL 2329939, at *1 (Aug. 9, 2006). When an opinion is from an "acceptable medical source" it might be entitled to greater weight. *Id.* at *5. However, the fact that a medical opinion is provided by someone who is not an "acceptable medical source" does not mean that the opinion receives no weight. Other factors an ALJ can consider in assigning weight to a medical opinion include: how long a source has known a claimant, and how frequently the source saw the individual; how consistent the opinion is with other evidence; the degree to which the source presents relevant evidence to support her opinion; and whether the source has a specialty or area of expertise relevant to the opinion. *Id.* at *4-5. In some circumstances "it may be appropriate to give more weight to the opinion of a medical source who is not an 'acceptable medical source' if he or she has seen the individual more often than the treating source and had provided better supporting evidence and a better explanation for his or her opinion." *Id.*

In his opinion, the ALJ explained that he considered Nurse Practitioner Goldberg's statements and clinical notes in evaluating Mr. Piccola's functioning. R. 21. The ALJ did not give Nurse Goldberg's opinion the "great weight" he afforded to Dr. Suslak and Dr. Glasco. Considering that the doctors were "acceptable medical sources;" they specialized in psychology or psychiatry; Nurse Practitioner treated Mr. Piccola for a little over two months (though this was more than the two listed doctors); and Nurse Practitioner Goldberg did not administer any objective tests; I cannot find that the ALJ's determination to assign the doctors' opinions more weight was necessarily contrary to the law. Further, it was not error for the ALJ not to accord

Nurse Goldberg's determination that Mr. Piccola was "disabled" particular weight.  Opinions on

whether a claimant is disabled are reserved to the Commissioner, because they are not medical

opinions but instead administrative findings.  20 CFR § 404.1527(d).  Accordingly, the ALJ did

not err in considering Nurse Goldberg's opinion.

**Order**

The decision of the Commissioner is reversed.  This case is remanded to the

Commissioner for proceedings consistent with this order.

DATED this 7th day of January, 2013.

BY THE COURT:

_____

R. Brooke Jackson
United States District Judge

8